TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

```
            ---------------------------
                                    :
         OPINION                    :  No. 88-303
                                    :
            of                      :  November 3, 1988
                                    :
    JOHN K. VAN DE KAMP             :
      Attorney General             :
                                    :
      JACK R. WINKLER               :
  Assistant Attorney General       :
                                    :
---------------------------------------------------------------
```

THE PHYSICIAN'S ASSISTANT EXAMINING COMMITTEE OF THE BOARD OF MEDICAL QUALITY ASSURANCE has requested an opinion on the following questions:

1.  May a physician assistant lawfully initiate, on behalf of his or her supervising physician orders for:

(a)  routine laboratory tests,

(b)  routine diagnostic radiological services,

(c)  therapeutic diets,

(d)  physical therapy treatments,

(e)  occupational therapy treatments, or

(f)  respiratory care services

for the diagnosis or treatment of a patient of the supervising physician?

2.  May a physician assistant lawfully transmit the orders of his or her supervising physician for the six services specified in the first question?

3.  May a physician assistant lawfully initiate or transmit the order of his or her supervising physician for life

saving emergency treatment for a patient of the supervising physician?

4. May a physician assistant lawfully initiate or transmit the order of his or her supervising physician for routine nursing services for a patient of the supervising physician?

5. May a physician assistant lawfully initiate or transmit the orders of his or her supervising physician referred to in the first four questions without a protocol?

6. Must the orders referred to in the first four questions be countersigned by a supervising physician before they may be carried out?

7. When the law conditions the actions of a licensed health care professional upon an order of a physician will an order for such action initiated or transmitted by a physician authorize such licensee to perform the action so ordered?

8. Are the medical services a physician assistant is authorized to perform by the regulation governing a physician assistant's authority for the administration of medication to a patient limited to a specific practice site, facility or institutional setting?

CONCLUSIONS

1. A physician assistant may not lawfully initiate, on behalf of his or her supervising physician, orders for:

(a) routine laboratory tests,

(b) routine diagnostic radiological services,

(c) therapeutic diets,

(d) physical therapy treatments,

(e) occupational therapy treatments, or

(f) respiratory care services

for the diagnosis or treatment of a patient of the supervising physician.

2. A physician assistant may lawfully transmit the orders of his or her supervising physician for the six services specified in the first conclusion in the institutional setting but not elsewhere.

3. A physician assistant may initiate personally and directly treatment procedures essential for the life of a patient. Where the emergency care is beyond the physician assistant's scope of practice a physician assistant may not lawfully initiate or transmit the order of his or her supervising physician to others for lifesaving emergency treatment for a patient of the supervising physician but may transmit and in some cases implement transport back-up procedures for the immediate care of patients pursuant to written procedures established by the physician assistant and the supervising physician.

4. A physician assistant may lawfully transmit the order of his or her supervising physician to a nurse to administer medications and therapeutic agents to implement a treatment of the supervising physician's patient but may not initiate such an order. A physician assistant may also order the drawing of blood from a patient of his or her supervising physician to provide a sample for a routine laboratory test when such test has been authorized by the supervising physician. To the extent that a physician may properly give orders to other licensed health care professionals regarding other routine nursing services for the physician's patient his or her physician assistant may lawfully transmit such orders to others. We find no other authority for a physician assistant to order routine nursing services.

5. The orders referred to in the first four conclusions which a physician assistant may lawfully initiate or transmit may be issued without a protocol when the supervising physician has not included protocols as one of the authorized mechanisms for supervision in the written guidelines for supervision of the physician assistant.

6. The orders referred to in the first four conclusions which may be lawfully initiated or transmitted by a physician assistant need not be countersigned by a supervising physician before they are carried out unless this supervising mechanism is included in the written guidelines for the supervision of the physician assistant.

7. When a statute conditions the actions of a licensed health care professional upon an order of a physician an order of a physician transmitted by a physician assistant but not an order initiated by a physician assistant will authorize the licensed recipient to carry out the order.

8. The medical services a physician assistant is authorized to perform by the regulation governing a physician assistant's authority for the administration of medication to a patient are not limited to a specific practice site, facility or institutional setting unless such limitation is imposed by the supervising physician.

ANALYSIS

Background

A new category of health care professional called the "physician assistant"[1] was created in 1970 by the enactment of the Physician's Assistant Practice Act (the "Act") as section 3500 et seq. of the Business and Professions Code.  The purposes of the Act are stated in section 3500 as follows:

"In its concern with the growing shortage and geographic maldistribution of health care services in California, the Legislature intends to establish in this chapter a framework for development of a new category of health manpower -- the physician's assistant.

"The purpose of this chapter is to encourage the more effective utilization of the skills of physicians by enabling them to delegate health care tasks to qualified physicians' assistants where such delegation is consistent with the patient's health and welfare.

"This chapter is established to encourage the utilization of physician's assistants by physicians, and to provide that existing legal constraints should not be an unnecessary hindrance to the more effective provision of health care services.  It is also the purpose of this chapter to allow for innovative development of programs for the education of physician's assistants."

The Act provides for the licensing of physician assistants following examination to establish that applicants meet education and training requirements.  The Act does not undertake to define the scope of practice of the physician assistant.  Instead Section 3502 of the Act provides that "a physician assistant may perform those medical services as set forth by the regulations of the board [the Division of Allied Health Professions of the Board of Medical Quality Assurance referred to as the "board" in this opinion] when such services are rendered under the supervision of a licensed physician or physicians approved by the board."  We must therefore look to those regulations to determine what medical services a physician's assistant may perform.

The Physician Assistants Regulations ("regulations" herein) are found in chapter 13.8 of title 16 of the California Code of Regulations in section 1399.500 through section 1399.556. To simplify our references to these regulations we will omit use of

---

[1]While the Act refers to the new category as a "physician's assistant" the regulations use the term "physician assistant", dropping the 's.  We use the latter terminology.

"section 1399" which precedes the decimal in all of these regulations and refer to them simply as regulation 5-- using that part of section number following the decimal. Thus regulation 500 refers to section 1399.500 in title 16 of the California Code of Regulations. Regulations 530 through 539 specify the education and training requirements for physician assistants. Regulations 540 through 545 define the scope of practice of the physician assistant and are set forth in full in the Analysis and Appendix to this opinion.

The questions presented require us to interpret these regulations. In approaching that task we note first that the Legislature has deferred to the expertise of the medical profession to define what medical services the physician assistant may perform by authorizing the board to adopt regulations specifying such services.[2] We will also defer to the expertise of the medical profession by interpreting the regulations to authorize only those services which are stated in clear unambiguous language and we will not undertake to add to those services by implications or broad interpretation of ambiguous words. Should our interpretation be narrower than that intended by the board it may be corrected by the relatively simple process of amending the regulations to clearly spell out the board's intention. We believe this preferable to a broader interpretation which the board may not have intended which could jeopardize the health and lives of patients.

General Qualifications

Before considering specific medical services it should be noted that the authority of a physician assistant to perform any medical service is qualified by section 3502 in the Act to those services which "are rendered under the supervision of a licensed physician or physicians approved by the board." This means that a physician assistant may not lawfully perform any medical service which constitutes the practice of medicine without supervision and that supervision may be provided only by those physicians who have been approved by the board.

Regulation 540 creates three additional general qualifications which a physician assistant must meet before he or she is authorized to perform any medical service, namely:

(1) He or she must be competent to perform the medical service in question;

_____

[2] For purposes of this opinion we assume that the statutory authority to adopt regulations granted to the board meets constitutional requirements. For a discussion of that matter see Comment, the Physicians' Assistant in California -- A Better Legal Foundation, 12 Santa Clara Lawyer 107, 11-113 (1972).

(2) He or she may provide only those medical services which are consistent with his or her education, training and experience; and

(3) He or she must be authorized in writing to provide the medical service in question by a supervising physician who is responsible for the patients cared for by that physician's assistant.

Section 545 creates two more general qualifications, namely:

"(a) A supervising physician shall be available in person or by electronic communication when the physician assistant is caring for patients.

"(b) A supervising physician shall delegate to a physician assistant only those tasks and procedures consistent with the supervising physician's specialty or usual and customary practice and with the patient's health and condition."

Since all the questions presented address specific medical service we are not called upon to interpret these general qualifications. It is assumed for purposes of this opinion that in discussing the authority of a physician assistant to perform a specific medical service that he or she possesses all of the general qualifications required by the Act and the regulations.

### Initiating Orders

We are asked in the first question whether a physician assistant may lawfully initiate,[3] on behalf of his or her supervising physician, an order[4] for six specified health care services. It is apparent that this question has reference to the medical services which a physician assistant is authorized to

---

[3]We assume the word "initiate" as used in the questions refers to the physician assistant originating the order without the authority of a supervising physician which both identifies the patient and specifies the particular services to be rendered.

[4]Webster defines "order" as a command, direction or instruction, usually backed by authority. When used in this sense an order connotes an authorization to do the act ordered and implies a duty on the recipient of the order to comply. The duty of one licensed health professional to comply with the orders of another depend upon contractual arrangements which are not mentioned in the opinion request. We therefore understand the word "order" as used in the questions to refer only to the physician assistant's authority to authorize the act ordered and not to the duty, if any, of the recipient to comply.

perform by section 541(f). That section provides that a physician assistant may:

"(f) Assist the physician in the institutional setting (including general acute care hospitals, acute psychiatric hospitals, skilled nursing facilities, intermediate care facilities, and special hospitals as defined in Section 1250 of the Health and Safety Code) by arranging admissions, by taking complete histories and performing physical examinations, by completing forms and charts pertinent to the patient's medical record, by providing services to patients requiring continuing care, including patients at home. This assistance also includes the review of treatment and therapy plans, the <u>ordering</u> of routine diagnostic laboratory tests and procedures and routine diagnostic radiological services, such as bone and chest x-rays, the <u>ordering</u> of therapeutic diets, physical therapy treatments, occupational therapy treatments and respiratory care services, and by evaluating patients and performing the procedures and tasks specified in subsections (a), (b), and (c) above and acting as first or second assistant in surgery under the supervision of an approved supervising physician. Nothing in this section shall be construed as authorizing a physician's assistant to prescribe medication, unless he or she is engaged in a health manpower pilot project pursuant to Section 3502.1 of the code." (Emphasis added.)

The six medical services referred to in the first question are mentioned in regulation 541(f) and in the same order. Those six medical services are among those listed as included in "this assistance" referring to the first sentence stating in part: "Assist the physician in the institutional setting . . .." Does this language authorize a physician assistant to initiate an order for one of the six listed services?

First we consider the significance of the words "assist the physician" as used in regulation 541(f). We understand the words to mean that the physician assistant may order the specified services only when they will "assist" the physician. What does "assist" mean in this context? First, we think the word signifies that the role of physician's assistant is secondary to that of the physician. It is the training, skill and judgment of the physician that the patient relies on to diagnose and treat his or her illness. While regulation 541(f) allows a supervising physician to delegate some tasks to a physician's assistant to assist the physician to make the diagnosis and determine the treatment those tasks must be limited to assistance to the physician's role, not a replacement of it. The services which regulation 541(f) authorizes a physician assistant to order include physical therapy treatments and occupational treatments. If this authorized the physician

assistant to initiate the order for such treatments it would be the physician assistant, not the physician, who determines the treatment of the patient.  This would replace, not "assist" the physician in determining the treatment for the patient.  By limiting the ordering functions in regulation 541(f) to those which "assist the physician" we believe the board intended to limit the physician assistant to those orders which have been previously authorized by the physician.  We therefore construe regulation 541(f) to authorize a physician's assistant to transmit a supervising physician's order for the listed services to others but not to initiate such orders.

We conclude that a physician assistant may not lawfully initiate, on behalf of his or her supervising physician, orders for the six services specified in the first question for the diagnosis or treatment of a patient of the supervising physician.

### Transmitting Orders

The second questions asks whether a physician assistant may lawfully "transmit"[5] the orders of his or her supervising physician for the six services specified in the first question.  In our analysis of the first question we interpreted regulation 541(f) to authorize a physician assistant to transmit a supervising physician's order for the services listed but not to initiate such orders.  However, the authority to transmit such orders is qualified by the words "in the institutional setting."  This means that the services a physician assistant is authorized to provide by regulation 541(f) may only be provided in general acute care hospitals, acute psychiatric hospitals, skilled nursing facilities, intermediate care facilities, special hospitals as defined in Health and Safety Code section 1250 and in like [6] institutions.  The reference to providing services "to patients requiring continuing care, including patients at home" in the first sentence of regulation 541(f) authorizes continuation of such assistance to patients after they leave the institutional setting.  However, it does not authorize such assistance to patients who were not in such

---

[5]We understand the word "transmit" as used in the questions to refer to relaying an order originating with a supervising physician by a physician assistant to another to be performed by the other person.

[6]We construe the word "including" in the parenthetical list of institutions in regulation 541(f) to be a word of enlargement rather than one of limitation.  We then apply the rule of construction known as ejusdem generis to conclude that the "institutional setting" referred to in regulation 541(f) means only those institutions listed and those which are similar to those listed.  See 67 Ops.Cal.Atty.Gen. 122, 136-137 for a discussion of these rules of construction.

institution or for any such assistance that is not related to the condition for which they were in the institution.

We conclude that a physician assistant may lawfully transmit the orders of his or her supervising physician for the six services specified in the first question in the institutional setting but not elsewhere.

<u>Lifesaving Emergency Treatment</u>

The third question asks whether a physician assistant may lawfully initiate or transmit orders for "lifesaving emergency treatment." In the list of orders authorized by regulation 541(f) lifesaving emergency treatment is not mentioned. However, the regulations address emergency situations in two other regulations. Regulation 541 provides that a physician assistant may:

> "(d) Recognize and evaluate situations which call for immediate attention of the physician and institute, when necessary, treatment procedures essential for the life of the patient."

Regulation 545(d) provides:

> "The physician assistant and the supervising physician shall establish in writing transport and back-up procedures for the immediate care of patients who are in need of emergency care beyond the physician assistant's scope of practice for such times when a supervising physician is not on the premises."

Except for transport of the patient we see nothing in either of these regulations which authorizes a physician's assistant to initiate or transmit orders to others to act in emergencies. The first authorizes the physician assistant to "institute treatment procedures" when necessary and essential for the life of the patient but also contemplates that the physician will be called immediately. We think this is limited to actions which the physician assistant does directly and personally. The second provides the procedures to be followed when the emergency occurs when the supervising physician is not on the premises. These call for transport of the patient to other facilities and back up by other available physicians. They do not contemplate a physician assistant directing the treatment actions of others in emergency situations. The written procedures might well include authorization to the physician assistant to make arrangements for the transportation of the patient, by ambulance or otherwise, to other facilities. However, the written procedures may not authorize a physician assistant to give orders to others regarding the diagnosis or treatment of the patient.

We conclude that a physician assistant may initiate personally and directly treatment procedures essential for the life of a patient.  We also conclude that where the emergency care is beyond the physician assistant's scope of practice a physician assistant may not lawfully initiate or transmit the order of his or her supervising physician to others for lifesaving emergency treatment for a patient of the supervising physician but may transmit and in some cases implement transport back-up procedures for the immediate care of patients pursuant to written procedures established by the physician assistant and the supervising physician.

## Routine Nursing Services

The fourth question asks whether the physician assistant may initiate or transmit orders of his or her supervising physician for "routine nursing services".  We note that nothing in regulation 541(f) mentions the ordering of routine nursing services by a physician assistant.  We must first determine what the question means by "routine nursing services."  Business and Professions Code section 2725 in the Nursing Practices Act (the NPA) provides in part:

"The practice of nursing within the meaning of this chapter means those functions, including basic health care, which help people cope with difficulties in daily living which are associated with their actual or potential health or illness problems or the treatment thereof which require a substantial amount of scientific knowledge or technical skill, and includes all of the following:

"(a) Direct and indirect patient care services that insure the safety, comfort, personal hygiene, and protection of patients; and the performance of disease prevention and restorative measures.

"(b) Direct and indirect patient care services, including, but not limited to, the administration of medications and therapeutic agents, necessary to implement a treatment, disease prevention, or rehabilitative regimen ordered by and within the scope of licensure of a physician, dentist, podiatrist, or clinical psychologist, as defined by Section 1316.5 of the Health and Safety Code.

"(c) The performance of skin tests, immunization techniques, and the withdrawal of human blood from veins and arteries.

"(d) Observation of signs and symptoms of illness, reactions to treatment, general behavior, or general

physical condition, and (1) determination of whether such signs, symptoms, reactions, behavior, or general appearance exhibit abnormal characteristics; and (2) implementation, based on observed abnormalities, of appropriate reporting, or referral, or standardized procedures, or changes in treatment regimen in accordance with standardized procedures, or the initiation of emergency procedures."

Which of these services a registered nurse is authorized to perform are "routine" within the meaning of question 4?

The services described in (a) might be described as "routine nursing services." However in 67 Ops.Cal.Atty.Gen. 122, 139 we observed that subdivision (a) was intended to describe "the traditional, unique and nursing functions that do not depend on physician direction." Since the question speaks in terms of a physician's assistant giving "orders" for routine nursing services it would not appear to embrace the services described in (a). Registered nurses perform those services on their own authority without orders from other health care professionals. Similarly, the functions authorized by subdivision (d) are undertaken by registered nurses on their own initiative and do not contemplate orders from other health professionals. Thus they do not appear to be routine nursing services within the meaning of question 4.

The administration of medications and therapeutic agents by registered nurses authorized in (b) is conditioned upon an order from a physician, dentist, podiatrist or clinical psychologist. We assume these are included in the "routine nursing services" contemplated in the question in the light of regulation 541 which provides in part that a physician assistant may:

"(h) Administer medication to a patient, or transmit orally, or in writing on a patient's record, a prescription from his or her supervising physician to a person who may lawfully furnish such medication or medical device. The supervising physician's prescription, transmitted by the physician assistant, for any patient cared for by the physician assistant, shall be based either on a patient-specific order by the supervising physician or on written protocol which specified all criteria for the use of a specific drug or device and any contraindications for the selection. A physician assistant shall not provide a drug or transmit a prescription for a drug other than that drug specified in the protocol, without a patient-specific order from a supervising physician. At the direction and under the supervision of a physician supervisor, a physician assistant may hand to a patient of the supervising physician a properly labeled prescription drug

prepackaged by a physician, a manufacturer, as defined in the Pharmacy Law, or a pharmacist.  In any case, the medical record of any patient cared for by the physician assistant for whom the physician's prescription has been transmitted or carried out shall be reviewed and countersigned and dated by a supervising physician within seven (7) days.  A physician assistant may not administer, provide or transmit a prescription for controlled substances in Schedules II through V inclusive without patient-specific authority by a supervising physician."

While this regulation contemplates a physician's assistant transmitting a physician's prescription to others it may only be transmitted to "a person who may lawfully furnish such medication." This would include a registered nurse where the physician's assistant is transmitting the physician's patient specific order. In such case the nurse has authority to administer the medication because it was ordered for the patient by a physician.  However, as we more fully discuss in the analysis of question 7,  when the physician assistant's order is based upon a protocol for use of the drug which is not patient specific we cannot say that its use has been "ordered by a physician" as those words are used in Business and Professions Code section 2725(b) to authorize a registered nurse to administer the drug.

The authority of a registered nurse in Business and Professions Code section 2725(c) to perform skin tests, immunization techniques, and the withdrawal of human blood from veins and arteries is not conditioned upon an order from a physician or other licensed practitioner.  The "routine nursing services" contemplated in the question may include such services. The question asks in part whether a physician's assistant may initiate or transmit a physician's order for such services.  The only regulation we have found which might give a physician assistant the authority to order such services is regulation 541(f), and more specifically in that wording which authorizes "the ordering of routine laboratory tests and procedures" when it assists the physician.  We have already noted that this is limited to orders previously authorized by the physician.  We believe the words "and procedures" following "routine laboratory tests" in regulation 541(f) means procedures which are necessary or ancillary to the laboratory tests.  This would include the drawing of blood to obtain a sample for the performance of routine diagnostic laboratory tests.  Thus regulation 541(f) gives a physician assistant authority to order the drawing of a blood sample to be used for a routine laboratory test.  Whether such an order authorizes the recipient to comply is the subject of question 7. We see no authority in regulation 541(f) or other regulations for a physician assistant to order blood drawn for other purposes or to order skin tests or immunizations.

We conclude that a physician assistant may lawfully transmit the order of his or her supervising physician to a nurse to administer medications and therapeutic agents to implement a treatment of the supervising physician's patient but may not initiate such an order. A physician assistant may also order the drawing of blood from a patient of his or her supervising physician to provide a sample for a routine laboratory test when such test has been authorized by the supervising physician. To the extent that a physician may properly give orders to other licensed health care professionals regarding other routine nursing services for the physician's patient his or her physician assistant may lawfully transmit such orders to others. We find no other authority for a physician assistant to order routine nursing services.

## Protocols

In question 5 we are asked whether a physician assistant may lawfully initiate or transmit orders of his or her supervising physician for the services referred to in the first four questions without a protocol. Regulation 545(e) provides:

"(e)     A physician assistant and his or her supervising physician shall establish in writing guidelines for the adequate supervision of the physician assistant which shall include one or more of the following mechanisms:

"(1)   Examination of the patient by a supervising physician the same day as care is given by the physician assistant.

"(2)   Countersignature and dating of all medical records written by the physician assistant within thirty (30) days that the care was given by the physician assistant.

"(3) The supervising physician may adopt protocols to govern the performance of a physician assistant for some or all tasks. The minimum content for a protocol as referred to in this section shall include the presence or absence of symptoms, signs, and other data necessary to establish a diagnosis or assessment, any appropriate tests or studies to order, drugs to recommend to the patient, and education to be given the patient. For protocols governing procedures, the protocol shall state the information to be given the patient, the nature of the consent to be obtained from the patient, the preparation and technique of the procedure, and the follow-up care. Protocols shall be developed by the physician or adopted from texts or other sources. Protocols shall be signed and dated by the supervising physician and the physician assistant. The supervising

physician shall review, countersign, and date a minimum of 10% sample of medical records of patients treated by the physician assistant functioning under these protocols within thirty (30) days.  The physician shall select for review those cases which by diagnosis, problem, treatment or procedure represent, in his or her judgment, the most significant risk to the patient;

"(4) Other mechanisms approved in advance by the committee."

This regulation requires that a supervising physician establish written guidelines for the supervision of a physician assistant.  Protocols are one of the four authorized mechanisms for the supervision of a physician assistant.  However, the written guidelines need establish only "one or more" of the authorized mechanisms of supervision.  It follows that if one of the other authorized mechanisms of supervision are established by the written guidelines the use of protocols is not required.

We conclude that the orders referred to in the first four questions which a physician assistant may lawfully initiate or transmit may be issued without a protocol when the supervising physician has not included protocols as one of the authorized mechanisms for supervision in the written guidelines for supervision of the physician assistant.

## Countersignatures

In our analysis of the previous question we quoted regulation 545(e) which requires written guidelines for the supervision of a physician assistant which must include one or more of four listed mechanisms.  One of the listed supervision mechanisms was "[c]ountersignature and dating [by a supervising physician] of all medical records written by the physician assistant within thirty (30) days that the care was given by the physician assistant."  As we noted in the case of protocols, countersignatures are only one of four authorized mechanisms of supervision.  The supervising physician may employ one or more of the other authorized supervision mechanisms without including the countersignature mechanism.

Regulation 545(e) is not the only regulation referring to countersignatures, however.  Regulation 541(h) quoted above also provides that a supervising physician shall review and countersign prescriptions which have been transmitted or carried out by the physician assistant.  Regulation 541(h) requires the countersignature of a supervising physician when an order prescribing medications is transmitted by a physician assistant whether the order is based on patient-specific order of a supervising physician or a protocol for use of the particular drug. However the countersignature is not required before the medication

is administered, though it must be provided within seven days thereafter.

We conclude that the orders referred to in the first four questions which may be lawfully initiated or transmitted by a physician assistant need not be countersigned by a supervising physician before they are carried out unless this supervising mechanism is included in the written guidelines for the supervision of the physician assistant.

### Authority of Recipient of Order

When a statute conditions the actions of a licensed health care professional upon an order of a physician will an order for such action initiated or transmitted by a physician assistant authorize such licensee to carry out the order?

The focus of the previous questions has been upon the authority of a physician assistant to give certain orders. While the law may authorize a physician assistant to give an order it does not follow that the recipient of the order may lawfully carry it out. Question 7 requires us to examine the legal authority of a recipient to carry out an order from a physician assistant. Since the recipient of the order is a licensed health care professional we must look to the law governing the practice of the recipient to determine that authority.

The question further limits our inquiry to those actions for which the law governing the practice of the recipient requires an order from a physician or other specified licensed health care professional to authorize the recipient to perform the action. We are asked whether an order initiated or transmitted by a physician assistant will suffice as the order of a physician within the meaning of the law governing the practice of the recipient and thus authorize the recipient to carry out such order.

When the order in question originates with a physician and such order is transmitted by a physician assistant to another licensed health care professional it is clear that the order is that of the physician not the order of the physician assistant. Such an order satisfies the requirement in the law governing the practice of the recipient that the action be ordered by a physician even though the order is transmitted to the recipient by a physician assistant. It follows that the recipient is authorized to carry out such an order.

However, when the order in question is initiated by a physician assistant the requirement in the law governing the recipient's practice that the action be ordered by a physician is not satisfied. The fact that in initiating the order the physician assistant is acting pursuant to a protocol or other general authority from a supervising physician which does not specify both

the action to be ordered and the patient for whom it is ordered does not make the order that of the supervising physician for the purpose of the law governing the practice of the recipient of the order. It follows that the recipient is not authorized to carry out such an order.

By way of example we note that the NPA authorizes a registered nurse to provide "direct and indirect patient care services, including, but not limited to, the administration of medications and therapeutic agents, necessary to implement a treatment, disease prevention, or rehabilitative regimen ordered by and within the scope of licensure of a physician, dentist, podiatrist, or clinical psychologist." (Bus. & Prof. Code, § 2725(b).) An order to administer a medication to a patient initiated by a physician assistant would not be order by one of the health care professionals specified in the NPA. Thus a registered nurse would not have legal authority to carry out the order initiated by a physician assistant. On the other hand a registered nurse would have legal authority to carry out an order to medicate a patient which originated with the patient's physician and was transmitted to the registered nurse by a physician assistant.

We conclude that when a statute conditions the actions of a licensed health care professional upon an order of a physician an order of a physician transmitted by a physician assistant but not an order initiated by a physician assistant will authorize the licensed recipient to carry out the order.

Practice Site

The last question asks whether the medical services a physician assistant is authorized to perform by the regulation governing a physician assistant's authority for the administration of medication to a patient is limited to any specific practice site, facility or institutional setting. The regulation in question is regulation 541(h) which has been quoted above. Unlike regulation 541(f) which limits the authority granted the physician assistant to assist the physician as provided therein to "the institutional setting" there is nothing in regulation 541(h) which itself limits the authority which may be given the physician assistant to an institutional setting or other site. Of course the supervising physician may limit the places where the physician assistant may perform the services mentioned in regulation 541(h) in the written delegation of authority required by regulation 540 or in the protocols which govern the physician assistant's actions.

We conclude that the medical services a physician assistant is authorized to perform by the regulation governing a physician assistant's authority for the administration of medication to a patient are not limited to a specific practice site, facility or institutional setting unless such limitation is imposed by the supervising physician.

* * * * *

APPENDIX

Article 4. Practice of Physician Assistants

Regulation 540.  Limitation on Medical Services

"A physician assistant may only provide those medical services which he or she is competent to perform and which are consistent with the physician assistant's education, training, and experience, and which are delegated in writing by a supervising physician who is responsible for the patients cared for by that physician assistant.  The committee or division or their representative may require proof or demonstration of competence from any physician assistant for any tasks, procedures or management he or she is performing.  A physician assistant shall consult with a physician regarding any task, procedure or diagnostic problem which the physician assistant determines exceeds his or her level of competence or shall refer such cases to a physician."

Regulation 541. Medical Services Performable.

"A physician assistant may:

"(a)   Take an appropriate history; perform an appropriate physical examination and make and assessment therefrom, and record and present pertinent data in a manner meaningful to the physician.

"(b)   Perform and/or assist in the performance of laboratory and screening procedures delegated by the supervising physician where the procedures to be performed are consistent with the physician's specialty or usual and customary practice, and with the patient's health and condition.

"(c)   Perform or assist in the performance of therapeutic procedures delegated by the supervising physician where the procedures to be performed are consistent with the physician's specialty or usual and customary practice, and with the patient's health and condition.

"(d) [quoted in the Analysis at p. 9.]

"(e)   Instruct and counsel patients regarding matters pertaining to their physical and mental health, such as diets, social habits, family planning, normal growth and development, aging, and understanding of and long term management of their disease.

"(f) [quoted in the Analysis at p. 6.]

"(g)    Facilitate   the   physician's   referral   of
patients to the appropriate health facilities, agencies,
and resources of the community."

"(h) [quoted in the Analysis at p. 11.]

Regulation 542  Delegated Procedures.

"The   delegation   of   procedures   to   a   physician
assistant under Section 1399.541, subsections (b) and (c)
shall not relieve the supervising physician of primary
continued responsibility for the welfare of the patient."

Regulation 543  Training to Perform Additional Medical
Services.

"A physician assistant may be trained to  perform
medical  services  which  exceed  his  or  her  areas  of
competency in the following settings:

"(a)    In  the  physical  presence  of  an  approved
supervising physician who is directly in attendance and
assisting the physician assistant in the performance of
the procedure;

"(b)  In an approved program;

"(c)  In a medical school approved by the Division
of Licensing under Section 1314;

"(d)  In a residency or fellowship program approved
by the Division of Licensing under Section 1321;

"(e)   In  a  facility  or  clinic  operated  by  the
Federal government;

"(f)  In a training program which leads to licensure
in a healing arts profession or is approved as Category
I continuing medical education or continuing nursing
education by the Board of Registered Nursing."

Regulation 545  Supervision Required

"(a)   [quoted in the analysis at p. 6.]

"(b)   [quoted in the analysis at p. 6.]

"(c)    A  supervising  physician  shall  observe  or
review evidence of the physician assistant's performance

19                                        88-303

of all tasks and procedures to be delegated to the physician assistant until assured of competency.

"(d) [quoted in the Analysis at p. 9.]

"(e) [quoted in the Analysis at p. 13.]

"(f) In the case of a physician assistant operating under interim approval, the supervising physician shall review, sign and date the medical record of all patients cared for by that physician assistant within seven (7) days if the physician was on the premises when the physician assistant diagnosed or treated the patient. If the physician was not on the premises at that time, he or she shall review, sign and date such medical records within 48 hours of the time the medical services were provided.

"(g) Except in a life-threatening situation, a physician assistant shall perform surgery requiring other than a local anesthesia only under the direct and immediate supervision of an approved physician.

"(h) The supervising physician has continuing responsibility to follow the progress of the patient and to make sure that the physician assistant does not function autonomously. The supervising physician shall be responsible for all medical services provided by a physician assistant under his or her supervision."